AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

**NORTHERN** DISTRICT OF **CALIFORNIA**

UNITED STATES OF AMERICA
V.
JOSEPH NATHANIEL HARRIS

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 05 70328

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about **March 28, 2005** in **Santa Clara** county, in the **Northern** District of **California** defendant(s) did, (Track Statutory Language of Offense) knowingly and willfully embezzle, steal, and otherwise without authority convert to the use of any person other than the rightful owner and intentionally misapply the property and other assets of a health care benefit program

in violation of Title **18** United States Code, Section(s) **669**

I further state that I am a(n) **Special Agent, FBI** and that this complaint is based on the following
Official Title

facts:
See attached affidavit.

Continued on the attached sheet and made a part hereof:  ☒ Yes  ☐ No

Approved As To Form: _____
AUSA: MATTHEW A. LAMBERTI

_____
Name/Signature of Complainant: DEBORAH S. AMRHEIN

Sworn to before me and subscribed in my presence,

**5/13/05**
Date

at San Jose, California
City and State

PATRICIA V. TRUMBULL
CHIEF U.S. MAGISTRATE JUDGE
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE, CA

IN RE:                              )
                                    )
JOSEPH NATHANIEL HARRIS    )
_____ )

## AFFIDAVIT

I, Deborah S. Amrhein, first having duly been sworn and under oath, states as follows:

1. I am a Special Agent with Federal Bureau of Investigation (FBI) in the San Francisco Division and have been so employed since November 26, 1995. In that capacity, I have been assigned to investigate federal violations relating to health care fraud and white collar crimes.

2. The statements contained in this affidavit are based in part on information provided by Special Agents of the FBI, on conversations held with detectives and officers from other state and local law enforcement agencies, on information provided by witnesses, and on my experience and background as a Special Agent of the FBI.

3. Since this affidavit is for the limited purpose of an arrest warrant, I have not included every fact known to me or developed through this investigation. I have set forth those facts necessary to establish probable cause to believe that a violation of Title 18, United States Code, Section 669 (Theft or embezzlement in connection with health care) has been committed by JOSEPH NATHANIEL HARRIS, date of birth December 25, 1962.

1

4. The purpose of this affidavit is to effect the arrest of JOSEPH NATHANIEL HARRIS, who I believe has engaged in the theft of property from San Jose Medical Group. According to Title 18, United States Code, Section 24, San Jose Medical Group qualifies as a "health care benefit program" under Title 18, United States Code, Section 669 in that it is an entity that is providing a medical benefit, item, or service for which payment may be made under a plan or contract, affecting commerce. I have seen documentation showing that San Jose Medical Group qualifies as a Medicare Federal Health Care Supplier to render health care related services to Medicare beneficiaries. I have also seen that San Jose Medical Group is enrolled in the Medicare program and has been assigned a Medicare Identification Number. I have also reviewed documentation showing that San Jose Medical Group has a written Medical Group/IPA Services Agreement between PacifiCare of California corporation and San Jose Medical Group, Inc., effective February 1, 2001. Moreover, additional documentation shows that San Jose Medical Group is an enrolled member of the Secure Horizons Health Plan. Secure Horizons Health Plan is the prepaid health plan operated by PacifiCare pursuant to the CMS (Center for Medicare & Medicaid Services) Agreement which provides Covered Services to individuals eligible to receive Medicare benefits. As described in more detail below, I believe there is reason to believe that JOSEPH NATHANIEL HARRIS stole from a health care benefit program computer equipment as well as a Digital Video Device (DVD) with

2

sensitive medical information on almost 200,000 patients.

## PROBABLE CAUSE THAT JOSEPH NATHANIEL HARRIS HAS VIOLATED TITLE 18, UNITED STATES CODE, SECTION 669

A. San Jose Medical Group

5. On March 31, 2005, Ernie Wallerstein, Chief Executive Officer (CFO) of San Jose Medical Group, 400 Race Street, San Jose, California (CA), contacted San Francisco Division of the FBI regarding a burglary wherein someone stole computer hardware and a computer disc (CD) containing patient data. Missing were two Dell computers, model OptiPlex GX 270, and one Dell computer flat screen monitor, model #E7735. One of the stolen computers contained a CD contained patient line item entries for clinic visits of nearly 200,000 patients of San Jose Medical Group. The CD was also missing.

6. Employees of San Jose Medical Group noticed that the computer items were missing on the morning of Monday, March 28, 2005. The main server for the San Jose Medical Group computer system logged a time and date of 1:40 a.m., March 28, 2005 when the first computer was disconnected from the network. On March 28, 2005, the crime was reported to and responded by the San Jose Police Department, in San Jose, CA.

7. The missing CD was described as containing patient line entries including each patient name, address, telephone number, date of birth, social security number, date of service, treatment doctor, diagnosis, procedure, billing codes, and insurance company information.

3

8. Wallerstein informed the FBI that JOSEPH NATHANIEL HARRIS was the branch manager of the San Jose Medical Group, McKee Branch clinic located at 227 North Jackson Avenue, San Jose, CA from August 2004 to September 22, 2004. During HARRIS's employment at San Jose Medical Group, there were several incidents of reported theft of money and medications. HARRIS was confronted by Wallerstein regarding the suspicion of his involvement in those thefts. Because of these suspicions, the Wallerstein asked HARRIS to resign from his position as manager. HARRIS complied.

9. During HARRIS's employment at San Jose Medical Group, he bragged to fellow employees of his experience as a Green Beret, in military security, and about his side business of selling used computers.

10. Following HARRIS's termination at San Jose Medical Group, six burglaries occurred at three different locations of San Jose Medical Group.

B. Silicon Valley Children's Fund

11. Minh Ngo-Gonzalez, Executive Director of Silicon Valley Children's Fund, 4525 Union Avenue, San Jose, CA 95124 advised that JOSEPH NATHANIEL HARRIS was employed by the Silicon Valley Children's Fund as Program Director from August 2002 to August 2003. He had an office situated on the second floor of the office building. HARRIS was fired inasmuch as he spent an excessive amount of time conducting his side business while at work. At work, HARRIS created a website for his personal business, JNH Consulting. Ngo-Gonzalez stated that HARRIS used photos, contacts, and

4

information from Silicon Valley Children's Fund for his consulting business. He also used the work computers to conduct his personal side business. HARRIS frequently posted computers for sale on www.craigslist.org. HARRIS submitted many of these postings using the e-mail address of neuro25@msn.com. When HARRIS was fired from Silicon Valley Children's Fund, most of his computer hard drive was copied, preserving examples of his website, craigslist postings, and personal e-mails.

12. On August 15, 2003, HARRIS sent an e-mail to Ngo-Gonzales about being fired. HARRIS wrote to Ngo-Gonzalez that, "...Anyways, Since I am not longer an employee, I felt it ok to contact the board memebers and myabe some donors abou this. I can make you job hard to." (sic)

13. On April 19, 2004, Silicon Valley Children's Fund was burglarized, and the thief stole two laptop computers and one desktop computer. The first laptop was taken from a locked office. The second laptop was taken from a back office behind two separate locked doors. The third computer was in a locked office behind the office where the second computer was taken. Also taken from a locked storage cabinet were various computer software CD's. The keys to the cabinet and the various offices were kept in a separate area of the office, in a desk drawer, in a location known by only a few employees.

14. On March 9, 2005, Silicon Valley Children's Fund was burglarized. Two computers were stolen from the second floor office space. One of the stolen computers was a

1  Dell computer, model Dimension 4550, a flat screen monitor,
2  keyboard, wireless mouse, mouse pad and two computer
3  speakers. This computer contained the organization's donor
4  database. The database contained the personal information
5  for thousands of donors, including credit card numbers,
6  electronic withdrawal authorization numbers, etc. The second
7  stolen computer was an older model IMAC Power PCG4 that was
8  taken from the desk of the administrative assistant. This
9  computer was previously assigned to JOSEPH NATHANIEL HARRIS.
10        15. The alarm to the second floor was not
11 activated during either burglary. The alarm can be manually
12 shut off without the use of a code. That fact is common
13 knowledge among the employees on the second floor as well as
14 former employees.
15        16. The second floor office space at Silicon
16 Valley Children's Fund has a mixture of employees from Santa
17 Clara County and the Silicon Valley Children's Fund. Any
18 computers on the second floor owned by the county were
19 untouched during both burglaries. All the computers stolen
20 were those belonging to the Silicon Valley Children's Fund.
21 C. Scott's Valley Burglary
22        17. On December 29, 2004, Martin Harris, bother of
23 JOSEPH NATHANIEL HARRIS reported to the Scotts Valley Police
24 Department (case #04V-01789), Scotts Valley, CA that his
25 house had been burglarized. Stolen from the house was
26 computer hardware, jewelry, audio/video equipment, clothing,
27 tools, lamps, passports, social security cards and Martin
28 Harris' vehicle (a Honda Element). Martin Harris learned

that $5,960.02 was charged to his Disney Visa card before January 15, 2005.  On January 27, 2005, Martin Harris went to Pier One on Blossom Hill Road, San Jose, CA where on December 27, 2004, $216.50 was charged to his visa card.  Martin Harris viewed the video surveillance of the suspect purchasing the rug.  Harris positively identified the suspect as his brother, JOSEPH NATHANIEL HARRIS.

18.  On February 10, 2005, the Scotts Valley Police Department conducted a search of J. HARRIS' residence located at 3993 Starview Drive, Apartment #2, San Jose, CA.  At that residence, the police officers found most of the items stolen from the residence of Martin Harris at the Starview Drive apartment, including a desktop computer and a laptop computer.

D.  Craigslist

19.  On April 14, 2005, subpoenaed records from craigslist for neuro25@msn.com showed numerous postings for computer hardware and software for sale.  I have seen several documents showing that HARRIS used neuro25@msn.com as his e-mail address.  San Jose Medical Group provided one such document dated March 30, 2004, wherein HARRIS e-mailed a portion of his employment resume to San Jose Medical Group e-mail address alena_diel@sanjosemed.com using his e-mail address Jose Harris (neuro25@msn.com).  HARRIS also uses neuro25@msn.com on his personal resume.

20.  Several of neuro25@msn.com's postings on craigslist match the description of items stolen from San Jose Medical Group and Silicon Valley Children's Fund and

7

other businesses. For example, on March 14, neuro25@msn.com advertised the following on craigslist: "Dell Dimension 4550 Desktop Computer, P4, 60 GB HD, 512 DDR, 2.0GHz, DVD+RW drive, CD drive; Wireless keyboard & mouse; 17" Flat Panel LCD Monitor; Software: Windows XP Pro." Five days earlier, a Dell Dimension 4550 desktop computer with a Pentium 4 processor, wireless mouse, keyboard, flat panel monitor, and Windows XP software was stolen from Silicon Valley Children's Fund. And on March 27, 2005, neuro25@msn.com advertised the following on craigslist: "Dell Optiplex GX150 PIII, 1 GHz, 256 RAM, 10GB HD, DVD/CD; 19" Matching Monitor." On the morning of March 28, 2005, employees of the San Jose Medical Group has found that two Dell computers, model OptiPlex GX 270, and a monitor were missing (including the DVD with the medical information for almost 200,000 patients). In addition, a number of other matches between postings on craigslist by neuro25@msn.com and computer thefts at San Jose Medical Group and Silicon Valley Children's Fund exist.

E. Recent activities of Joseph Nathaniel Harris

21. On April 15, 2005, HARRIS canceled a scheduled interview with the FBI stating he was in Coalinga, CA visiting a friend.

22. On April 16, 2005, at approximately 0010 hours, HARRIS was arrested by Campbell Police Department, in Campbell, CA for auto theft. His accomplice, described as a light skinned African American male, height approximately 5'10", about 160 pounds, wearing black baggy pants, a dark colored jacket and black beret fled and was not apprehended

8

by the police. HARRIS denied knowing this individual. HARRIS informed the arresting officer that he locked his keys in his vehicle, a 2001, teal colored, Hyundai Santa Fe. HARRIS and the arresting officer were unable to locate the Hyundai Sante Fe.

23. On April 16, 2005, at approximately 0055 hours, Leemar Demore Wilber was cited by the Santa Clara County Sheriff's Office, in Santa Clara County, CA for driving with no lights during darkness. The vehicle was described as a 2001, blue, Hyundai Sante Fe, CA license number 4URU128. The vehicle was registered to JOSEPH HARRIS. The vehicle was impounded by Cupertino Tow at the request of the Santa Clara Count Sheriff's Office.

24. On April 18, 2005, Rhonda Engel of 603 Savstrom Way, San Jose, CA informed the FBI and Detective Enrique Marquez of the San Jose Police Department that "DOC" JOSEPH HARRIS was currently residing in the garage of her residence. Engel stated that Leemar, a friend of HARRIS informed her that he was concerned about HARRIS. Leemar told Engel that on Friday, April 15, 2005, he and HARRIS were driving when HARRIS saw the police and fled on foot. Leemar stated that he was left with HARRIS's vehicle and had no driver's license. Because he had no driver's license, he was stopped by the police and the vehicle was seized. Leemar told Engel that he did not know what happened to HARRIS.

F. <u>Statements made by Joseph Nathaniel Harris</u>

25. On April 20, 2005, FBI Special Agent Jennifer Murphy and I interviewed HARRIS while he was in custody at

9

the Santa Clara County Jail, in San Jose, CA on charges related to the theft of a vehicle in Campbell, CA, on April 16, 2005. HARRIS had not been appointed legal counsel for this matter. The purpose of the interview was to investigate the theft of property from San Jose Medical Group. Prior to the interview, I advised HARRIS of the Advice of Rights (*e.g.*, his right to remain silent and his right to an attorney.) HARRIS signed an FBI Waiver of Rights.

26. During the interview, HARRIS stated that on Friday, April 15, 2005, he drove to Coalinga, CA to visit a friend named Monica. He also stated that approximately one year ago, he sold Monica a Dell computer. The computer was given to him by Sam or Robert, former co-workers at his former employer.

27. HARRIS denied stealing a car in Campbell, CA on April 16, 2005. He also denied being with anyone named Leemar. He claimed that he may have encountered an individual on that evening that looked like someone he once met, named Leemar. HARRIS stated that he did not know the current location of his personal vehicle, a bluish green, 2001, Hyundai Sante Fe.

28. HARRIS stated that he did advertise computers for sell on-line on Craigslist. He always cleaned the hard drive before selling these computers.

29. HARRIS stated that if the FBI agents took him out of jail, he could locate within 45 minutes the stolen disc with patients' medical information. HARRIS told the interviewing FBI agents that when he read in the paper that

10

the medical information of 200,000 people was contained on the CD he almost fainted and he thought "if this is the CD, let me smash it in a million pieces." HARRIS stated that he was 95% sure that the disc came from the San Jose Medical Group. HARRIS referred to the stolen DVD as, variously, a disc, a CD, and a DVD.

30. HARRIS stated, "I am not sure how I got this CD. I think we probably know how I got it." HARRIS stated that the disc he believed the FBI was interested in looks like a CD and has DVDR written on it. HARRIS described the CD/DVD as yellow or gold with no markings other than the factory markings. HARRIS stated that the CD/DVD was half burned or used. HARRIS stated that he believed that a CD/DVD possibly belonging to San Jose Medical Group was in his Hyundai Sante Fe. HARRIS described that the CD/DVD was possibly located in the CD carrier behind the driver's seat or in a green backpack in the back seat area. HARRIS signed a FBI Consent to Search form allowing the FBI to retrieve a yellow/gold CD/DVD from his Hyundai Santa Fe.

31. When I asked HARRIS about the stolen DVD, he stated, "If you have a special pair of shoes that only come from one building, then I know you got those shoes from that building."

32. On April 20, 2005, Wallerstein described DVD's used by San Jose Medical Group as re-writeable, gold in color, Sony or Maxell brand.

33. On April 21, 2005, HARRIS explained that there was an external DVD burner attached to one of the computers

11

stolen from the San Jose Medical Group during March 2005. HARRIS stated that this fact was not noted in the newspaper article about the March 28, 2005 burglary of the San Jose Medical Group at 400 Race Street, San Jose, CA. HARRIS stated that he believed that the CD/DVD that he described as possibly being in his vehicle is the missing CD/DVD and that it was found in the DVD burner. HARRIS did not remember there being a CD in the CPU drive. He did not remember black writing on any CD/DVD in his possession.

34. On April 21, 2004, HARRIS advised that he may be able to check with the person who purchased the hard drive (that was missing from San Jose Medical Group) to see if a CD is still in the hard drive.

35. On April 22, 2005, Wallerstein confirmed that one of the Dell computers stolen during the March 28, 2005 burglary had an LG DVD writer/reader attached to the computer work station. His original complaint had overlooked that information. Peggy Harper, Senior Systems Analyst at the San Jose Medical Group, further confirmed that the stolen disc was not a CD in an internal drive of the computer but, rather, a DVD that was in the external drive. Wallerstein and Harper confirmed that HARRIS's statements about the external drive and the DVD were accurate.

G. DVD Recovery

36. On April 20, 2005, the FBI learned that HARRIS's Hyundai Sante Fe was stored at the Cupertino Tow impound lot, located at 365 Villa Street, Mountain View, CA.

37. On April 22, 2005, the FBI obtained a property

12

1  release from the Santa Clara County Sheriff's Office to seize
2  a yellow or orange CD/DVD from HARRIS's Hyundai Sante Fe.
3          38.  On April 22, 2005, the FBI seized a yellow
4  Maxell DVD from HARRIS's Hyundai Sante Fe.
5          39.  On April 25, 2005, Peggy Harper stated during
6  the first two weeks of January 2005, she created a back-up of
7  the end of the year patient data from the network.  She saved
8  the data as a folder named "Dec 2004 Backups" in the format
9  of text files.  The data was burned onto a re-writeable DVD
10 using her Dell computer station and the LG CD/DVD
11 writer/reader.  The copied DVD containing the patient data
12 that was stolen on March 28, 2005 along with Harper's Dell
13 computer station and the LG CD/DVD writer/reader.  The DVD
14 was in the LG CD/DVD writer/reader when it was stolen.
15 Harper stated that because of her heavy workload, it is
16 possible that she did not have an opportunity to make any
17 written identification markings on the data DVD.
18         40.  On April 26, 2005, Harper viewed a copy of the
19 stolen DVD.  Upon opening the DVD, Harper recognized the
20 folder named "2004_12_DEC_RAW_DATA" as the one she created on
21 her computer.  The folder contained the following text files:
22         a.  BAR_ALL_D
23         b.  BAR_ALL_TRF
24         c.  BAR_LI_PAY
25         d.  BILL_AREA
26         e.  FSC_FOLLOW_UP
27         f.  MCA_ALL
28         g.  MCA_ENROLL

h.   MCA_DETAIL

                i.   REF_PHY

Harper identified the files as those files she created and saved to the stolen DVD.  The Properties of the DVD showed that the DVD was created on Monday, January 03, 2005, 1:55:57 PM.

        41.  Based on the above information, there is probable cause to believe and I do believe that JOSEPH NATHANIEL HARRIS did knowingly, willfully and unlawfully steal from a health care benefit program, computer equipment as well as a DVD with sensitive medical information on almost 200,000 patients, in violation of Title 18, United States Code, Section 669.

_____
Deborah S. Amrhein
Special Agent
Federal Bureau of Investigation
San Jose, CA

Subscribed and sworn to before me
this 13 day of May, 2005.

_____
The Hon. Patricia V. Trumbull
Chief U.S. Magistrate Judge

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☒ COMPLAINT ☐ INFORMATION ☐ INDICTMENT ☐ SUPERSEDING

**OFFENSE CHARGED**

18 U.S.C. § 669 -- Theft or Embezzlement in Connection with Health Care

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

**PENALTY:**
10 years imprisonment
$250,000 fine
3 years supervised release
$100 special assessment

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA

**DEFENDANT - U.S.**

▶ JOSEPH NATHANIEL HARRIS

DISTRICT COURT NUMBER

**PROCEEDING**

Name of Complainant Agency, or Person (&Title, if any)
Special Agent Deborah S. Amrhein--Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
   ☐ U.S. Att'y  ☐ Defense

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under ▶

} SHOW DOCKET NO.

} MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on THIS FORM   KEVIN V. RYAN
☒ U.S. Att'y  ☐ Other U.S. Agency

Name of Asst. U.S. Att'y (if assigned)   MATTHEW A. LAMBERTI

**DEFENDANT**

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction
6) ☒ Awaiting trial on other charges  } ☐ Fed'l  ☒ State
If answer to (6) is "Yes", show name of institution
Santa Clara County Jail

Has detainer been filed?  ☐ Yes  ☐ No  } If "Yes" give date filed   Month/Day/Year

**DATE OF ARREST** ▶   Month/Day/Year
Or... if Arresting Agency & Warrant were not
**DATE TRANSFERRED TO U.S. CUSTODY** ▶   Month/Day/Year

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT   Bail Amount: NO BAIL

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:

Before Judge:

Comments: